UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 21-cr-10208-NMG |
| (2) JAMES HOLYOKE, | |
| Defendant | |

## OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER

The United States of America, by Rachael S. Rollins, United States Attorney, and Alathea E. Porter, Assistant United States Attorney, hereby opposes Defendant James Holyoke's (hereinafter, "HOLYOKE") Motion for Review of Detention Order (hereinafter, the "Motion"). ECF Dkt. 171.

On July 23, 2021, HOLYOKE was arrested in connection with a five-count indictment charging him, and eight others, with controlled substance and firearm offenses. ECF Dkt. 1. On September 1, 2021, a federal grand jury returned a fifteen-count superseding indictment, charging HOLYOKE and ten others with controlled substance, firearm, and money laundering offenses. HOLYOKE is charged in Count One with conspiracy to distribute and to possess with intent to distribute 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 846, in Counts Two and Four through Seven with distribution of and possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and in Count Three with distribution and possession with intent to distribute 50 grams or more of methamphetamine and aiding and abetting, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(viii) and 18 U.S.C. § 2. ECF Dkt. 86.

On February 22, 2022, HOLYOKE filed a motion requesting a detention hearing. ECF

Dkt. 149.  Following a detention hearing—during which the government presented substantial evidence concerning, *inter alia,* the nature and scope of the drug trafficking organization ("DTO") and HOLYOKE's role distributing supplier quantities of methamphetamine—United States Magistrate Judge Judith G. Dein concluded that HOLYOKE should be detained until trial.  ECF Dkt. 164 (hereinafter, "Detention Order").  Specifically, Magistrate Judge Dein concluded that the government had proven by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."  Detention Order, at 2.  The ruling was based upon a correct application of the law and facts and should be upheld.

## I.    BACKGROUND

In or about October 2020, a cooperating witness (hereinafter, "the CW") provided information to law enforcement describing drug trafficking activities of HOLYOKE, a large-scale methamphetamine supplier in the Boston area, who regularly sold multi-pound quantities of methamphetamine.  Beginning in late October 2020, and continuing through March 2021, acting under the supervision and direction of investigators, the CW made nine successful controlled purchases of methamphetamine—eight directly from HOLYOKE, and one that was negotiated with HOLYOKE and delivered by co-defendant Edison KLOTZ (hereinafter, "KLOTZ").  All of the transactions were successfully audio and video recorded.  To date, investigators have received all but one of the laboratory results from the controlled purchases with HOLYOKE and KLOTZ, all of which confirm the substances to be pure methamphetamine.  In total, investigators seized approximately 5.7 pounds of methamphetamine in connection with these controlled purchases from HOLYOKE.

Investigators identified Reshat ALKAYISI (hereinafter, "ALKAYISI") as one of HOLYOKE's methamphetamine suppliers.  In February 2021, HOLYOKE arranged for the CW

to purchase methamphetamine directly from ALKAYISI.  Between February and April 2021, the CW, acting under the supervision and direction of investigators, made three successful controlled purchases of methamphetamine—two that were arranged by HOLYOKE and delivered by ALKAYISI, and one that was negotiated with ALKAYISI and delivered by Brian KELEMAN (hereinafter, "KELEMAN").  All of these transactions were successfully audio and video recorded by the CW.  Field tests for all of the suspected methamphetamine were positive for the presence of methamphetamine.   In total, investigators seized approximately 6 pounds of suspected methamphetamine in connection with the controlled purchases from ALKAYISI.

On May 5, 2021, the Honorable Denise J. Casper, United States District Judge, District of Massachusetts, authorized the interception of wire and electronic communications to and from a telephone used by ALKAYISI (hereinafter, the "Target Telephone") for a period of thirty days. *See* 21-93106-DJC.  Interceptions over the Target Telephone began on May 6, 2021.  On June 4, 2021, Judge Casper authorized the continued interception of wire and electronic communications to and from the Target Telephone for an additional period of thirty days.  Interceptions terminated on July 3, 2021.

Over the course of the period of interception, investigators intercepted numerous wire and electronic communications during which ALKAYISI used the Target Telephone to arrange drug transactions and to discuss collecting drug proceeds for drugs previously supplied on credit. Investigators identified multiple regular methamphetamine customers of ALKAYISI, including HOLYOKE, Robyn COSTA (hereinafter, "COSTA"), Eric DANEAULT (hereinafter, "DANEAULT"), Andre WATSON (hereinafter, "WATSON"), Patrick O'HEARN (hereinafter, "O'HEARN"), and Emil DZABIEV (hereinafter, "DZABIEV").   In addition, investigators identified criminal associates of ALKAYISI, including KELEMAN.

Investigators learned that HOLYOKE utilized encrypted applications to coordinate his drug trafficking activities, and as such, communications between HOLYOKE and ALKAYISI were not intercepted. However, investigators intercepted multiple communications between ALKAYISI and KELEMAN discussing supplying HOLYOKE with large quantities of methamphetamine. Between May and June 2021, interceptions indicate that ALKAYISI directed KELEMAN to deliver methamphetamine to HOLYOKE on at least four occasions, the last of which did not occur because KELEMAN got arrested. Based on interceptions and surveillance, investigators believe that in May 2021 alone KELEMAN delivered at least 26 pounds (or 11.8 kilograms) of methamphetamine to HOLYOKE on behalf of ALKAYISI.

First, on May 6, 2021, interceptions and surveillance indicate that KELEMAN delivered 8 pounds of methamphetamine to HOLYOKE on behalf of ALKAYISI. Second, on May 19, 2021, interceptions and surveillance indicate that KELEMAN delivered another 8 pounds of methamphetamine to HOLYOKE on behalf of ALKAYISI. Third, on May 31, 2021, interceptions and surveillance indicate that KELEMAN delivered another 10 pounds of methamphetamine to HOLYOKE on behalf of ALKAYISI.

On June 1, 2021, interceptions indicated that ALKAYISI had received a shipment of methamphetamine and he directed KELEMAN to retrieve the packages from a UPS store in Cumberland, Rhode Island. ALKAYISI further told KELEMAN to deliver another 8 pounds ("another 8") to HOLYOKE after he retrieved the methamphetamine from the UPS store. Investigators established surveillance, observed KELEMAN pick up four large boxes from the UPS store, and then intercepted a call between KELEMAN and ALKAYISI discussing the boxes and how ALKAYISI's supplier disguised the drugs by shipping them in Chewy.com or Amazon boxes. Investigators then initiated a traffic stop, obtained a search warrant, and seized the packages

from KELEMAN, which contained a total of approximately 100 pounds of suspected methamphetamine.  The 100 pounds of suspected methamphetamine field tested positive for the presence of methamphetamine.  Investigators sent the suspected methamphetamine to the DEA Northeast Laboratory for analysis and the results are pending.

At this time, based on the controlled purchases, as well as the interceptions and surveillance related to ALKAYISI and KELEMAN supplying HOLYOKE, the government estimates that at approximately 38 pounds (or 17 kilograms) of pure methamphetamine are attributable to HOLYOKE.

## II.    PROCEDURAL BACKGROUND

On September 1, 2021, a federal grand jury sitting in Boston, Massachusetts returned a five count indictment, charging HOLYOKE, ALKAYISI, KELEMAN, COSTA, DANEAULT, WATSON, DZABIEV, KLOTZ, and three other defendants, with conspiracy to distribute and possess with intent to distribute controlled substances, as well as distribution of controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), charging ALKAYISI and COSTA with possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. §924(c), and charging ALKAYISI, KELEMAN, and three other defendants with money laundering offenses, in violation of 18 U.S.C. § 1956.  *See United States v. Reshat Alkayisi, et al.,* 21-cr-10208-NMG, ECF Dkt. 86.

On March 14, 2022, Magistrate Judge Dein held a detention hearing, during which the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) (drug offense with a maximum penalty of more than ten years) and 3142(f)(2)(A) (risk of flight).  The government also filed a 32-page affidavit in support of detention.  *See* FBI Task Force Officer Michael Rumery Affidavit in Support of Pre-Trial Detention, filed under seal.  At the detention hearing, HOLYOKE

argued for release, and proposed conditions of release, essentially identical to those set forth in the Motion.

Following the hearing, after taking the matter under advisement, Magistrate Judge Dein found that the rebuttable presumption in favor of detention applied under 18 U.S.C. § 3142(e)(3), but that HOLYOKE had presented evidence sufficient to rebut the presumption. *See* Detention Order, at 2. Nonetheless, Magistrate Judge Dein concluded that the government had established by clear and convincing evidence that no conditions could reasonably assure the safety of any other person and the community. *See id*.

Magistrate Judge Dein provided additional reasons and explanation for her order of detention. Specifically:

> The defendant is charged in a multi-defendant, multi-count indictment with conspiracy to distribute and to possess with intent to distribute 500 grams or more of methamphetamine… The evidence against him appears strong. The evidence establishes a wide ranging drug conspiracy involving over 100 pounds of methamphetamine, of which 30 pounds is attributable to the defendant in just a few months. During the course of the investigation, a confidential witness successfully completed eleven controlled purchases directly from, or arranged by, Holyoke. Of these, Holyoke personally delivered the methamphetamine for eight purchases.
>
> …
>
> The defendant has an extensive criminal history… In 2005 and 2006 he was convicted twice in federal court of conspiracy to distribute and to possess with intent to distribute methamphetamine and sentenced to 72 months of imprisonment, and then to a concurrent sentence of 120 months, both with 5 years of supervised release… the evidence shows that within a few years he was engaged in the same criminal behavior despite have [sic] served a lengthy period of incarceration. As a result of these prior convictions Holyoke is subject to increased punishment under 21 U.S.C. sec. 841(b)(1)(A)(viii).
>
> The defendant contends that he relapsed into using drugs as a result of difficult personal events… While this court is very sympathetic, the conduct reflected in the charges shows substantial participation in a leadership role in a wide spread [sic] drug conspiracy – there was not a relapse causing drug purchases for personal use. Considering the speed with which the defendant seems to have reengaged in substantial drug trafficking despite earlier drug treatment programs and despite

6

having served a lengthy period of incarceration, this court concludes that there are no conditions or combination of conditions of release that will reasonably assure the safety of the community.

Detention Order, at 3.

Magistrate Judge Dein also cited multiple Section 3142(g) factors in support of her conclusion, including that: (1) the weight of evidence against HOLYOKE is strong; (2) HOLYOKE is subject to a lengthy period of incarceration if convicted; (3) HOLYOKE's prior criminal history; (4) HOLYOKE's history of violence or use of weapons; and (5) HOLYOKE's history of alcohol or substance abuse. *Id.* at 2. Weighing all the pertinent facts against the statutory factors, Magistrate Judge Dein ordered HOLYOKE detained pending trial. *Id.*, at 3.

## III.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the detention order." This Court, as the court of "original jurisdiction," conducts *de novo* review of a contested detention order. *See United States v. Gennaco*, 834 F. Supp. 2d 38, 40 (D. Mass. 2011) (Gorton, J.).

Section 3142(e) provides that a defendant may be detained pending trial if, after a hearing, the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The government bears the burden of demonstrating that the defendant poses a danger to the community by clear and convincing evidence, or that the defendant poses a flight risk by a preponderance of the evidence. *See United States v. Rose*, No. 11-10062, 2012 WL 2500497, *1 (D. Mass. June 26, 2012) (Gorton, J.).

In determining whether any conditions of release will reasonably assure a defendant's

appearance and the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

Where, as here, the defendant is charged with an offense punishable under the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, that carries a maximum term of imprisonment of ten years or more, a rebuttable presumption arises of both danger to the community and risk of flight. *See* 18 U.S.C. § 3142(e)(3)(A). While the defendant bears the burden of producing evidence to rebut that presumption, the ultimate burden of proof remains with the government. *See Gennaco,* 834 F. Supp.2d at 40.

## IV.    ARGUMENT

### A.   The Magistrate Judge Properly Ordered HOLYOKE Detained

Magistrate Judge Dein properly ordered HOLYOKE detained pending trial. After considering the evidence submitted by HOLYOKE in support of his arguments for release, Magistrate Judge Dein found that HOLYOKE had "presented evidence sufficient to rebut the presumption [of detention]." Detention Order, at 2. Despite that finding, after considering all of the evidence and weighing the Section 3142(g) factors, Magistrate Judge Dein determined that the government's evidence established by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." *Id.* This conclusion was based on a proper application of the law to the facts and should be upheld.

Additionally, although Magistrate Judge Dein did not so find, the government maintains that it has also established by a preponderance of the evidence that no condition or combination of

conditions will reasonably assure the defendant's appearance as required. As set forth below, the Court should also find that there are no conditions that will ensure the defendant's appearance as required, and thus find that he should be detained pending trial pursuant to Section 3142(f)(2)(A).

### 1. The Government Has Established By a Preponderance of Evidence That HOLYOKE Poses a Risk of Flight

The government submits that it has established by a preponderance of the evidence that HOLYOKE poses a risk of flight, and that there is no condition or combination of conditions that can assure his appearance as required. HOLYOKE is currently facing a mandatory minimum sentence of 15 years in prison, with a maximum sentence of life in prison. The evidence in this case indicates that HOLYOKE is not safety-valve eligible based on his extensive criminal history. *See* 18 U.S.C. § 3553(f)(1); *see also* U.S.S.G. § 5C1.2(a)(1). Moreover, subject to an investigation by United States Probation, the government estimates that HOLYOKE could face a potential sentencing guideline range of 30 years to life in prison.[1]

As Magistrate Judge Dein held, the evidence in this case against HOLYOKE is "strong," and he is subject to a "lengthy period of incarceration if convicted." Detention Order, at 2. Based on these factors alone—weight of the evidence and expected sentence—the risk of flight is very real.

When enacting the Bail Reform Act, Congress "found that [drug] offenders, as a general rule, pose a special risk of flight." *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985). Magistrate Judge Dein found that HOLYOKE rebutted the presumption in this case. *See* Detention Order, at 2. If this Court were to agree that HOLYOKE had presented sufficient evidence to rebut

---

[1] This calculation is based on a determination that HOLYOKE is a career offender based on his two prior federal felony drug convictions. It is worth noting, however, that based just on the drug weight attributable to him, HOLYOKE's base offense level would be 38, and he would likely fall into Criminal History Category III based on a total of six criminal history points. As such, even if he were not deemed a career offender under the guidelines, he would be facing a sentencing range of 292-365 months after trial.

the presumption, detention based on risk of nonappearance is still warranted.  "Even after a defendant has produced evidence to rebut the presumption, 'the presumption does not disappear, but rather retains evidentiary weight.'"  *United States v. Hilario-Reyes*, 218 F. Supp. 2d 185, 189 (D.P.R. Aug. 9, 2002) (quoting *United States v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir. 1987) (affirming order of detention in drug trafficking case despite evidence of strong family and community ties, where weight of the evidence was strong and defendant was facing a 10 year mandatory minimum term of imprisonment).  As was the case in *Hilario-Reyes*, the "facts here fall squarely within the congressional concern that 'flight to avoid prosecution is particularly high among persons charged with major drug offenses." *Id.*

The conditions proposed by HOLYOKE are insufficient to overcome the presumption here. HOLYOKE proposes conditions of release that include participation in drug treatment and testing. *See* Motion, at 1 and 5-6.  The evidence in this case is that HOLYOKE led a transient life, bouncing back and forth between various short-term rental properties (*e.g.,* Airbnb locations) and hotels. Though HOLYOKE maintained employment, he continued to distribute supplier-level quantities of methamphetamine, and he regularly used that illegal substance as well.  Given the lack of stable residence, and particularly in light of the potential life sentence he faces, the risk of nonappearance is high.  Based on all of the evidence submitted, the government has proven by a preponderance of the evidence that HOLYOKE poses a significant flight risk.

### 2.   *The Government Has Proven By Clear and Convincing Evidence That HOLYOKE Poses a Danger to the Community*

Magistrate Judge Dein properly held that HOLYOKE poses a danger to the community and that there is no condition or combination of conditions that can assure the safety to the community.  HOLYOKE has as very serious history of significant drug trafficking activity.  In fact, prior to the instant offense he was twice convicted in this district of federal drug trafficking

felonies.  *See United States v. James Holyoke,* 05-cr-10236-RCL, and *United States v. James Holyoke*, 05-cr-10037-GAO.  Despite being sentenced to 72 months and 120 months respectively for those convictions, HOLYOKE engaged in identical conduct within a few years of his release from incarceration.  *See* Detention Order, at 3.

As Magistrate Judge Dein expressly recognized, HOLYOKE was distributing supplier-level quantities of methamphetamine, which cannot be excused away as something that happened due to a relapse following difficult personal events.  *See* Detention Order, at 3.  The evidence establishes that HOLYOKE purchased supplier-level quantities of methamphetamine from ALKAYISI and that he distributed multiple-pound quantities to his customers, who in turn distributed large-quantities to their customers.  As noted by Magistrate Judge Dein, and as is set forth in detail in the Detention Affidavit, in a period of "just a few months" HOLYOKE was responsible for over 30 pounds of methamphetamine.  *See* Detention Order, at 3; *see also* Detention Affidavit, at 7-31.  Magistrate Judge Dein characterized the government's evidence in this case as "strong."  *See* Detention Order, at 3.

The evidence is that HOLYOKE sold large quantities of methamphetamine to customers who he knew were further distributing those drugs to others, who were in turn further distributing those drugs.  Moreover, after being serving lengthy sentences for two prior federal drug trafficking convictions for the same conduct, HOLYOKE went back to the *same* dangerous illegal conduct.  HOLYOKE has already demonstrated to the Court that he will not abide by conditions of release, that he will continue to engage in this dangerous behavior of distributing large quantities of serious controlled substances, and thus, that there are no conditions that can assure the safety to the community.

In light of all of the evidence discussed above—the serious nature of the crime charged,

his role in the DTO, and his criminal history—no condition or combination of conditions can reasonably assure the safety of the community.

## V.    CONCLUSION

Based on the foregoing, HOLYOKE's Motion for Review of Detention Order should be denied.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    /s/ Alathea E. Porter
ALATHEA E. PORTER
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Alathea E. Porter
ALATHEA E. PORTER
Assistant United States Attorney

Date: April 4, 2022